**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: September 28 2009

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 05-74260 |
| | ) | |
| Willie G. Robertson and | ) | Chapter 13 |
| Veda Robertson, | ) | |
| | ) | Adv. Pro. No. 08-3352 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Willie G. Robertson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ReliaStar Life Insurance Co., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER REGARDING
CROSS MOTIONS FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on the parties' cross motions for summary judgment [Doc. ## 30 & 31]. Plaintiff Willie G. Robertson ("Plaintiff") is a debtor in the underlying Chapter 13 bankruptcy case. In his complaint, he alleges that Defendant ReliaStar Life Insurance Co. ("Defendant") violated the automatic stay and the order of discharge entered in Plaintiff's prior Chapter 7 case by

continuing to charge interest on pre-petition loans made by Defendant to Plaintiff that were secured by Plaintiff's interest in a 403(b) annuity.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine whether the automatic stay or discharge injunction have been violated are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2). For the reasons that follow, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be granted.

## FACTUAL BACKGROUND

The parties have stipulated to the following facts. On July 28, 1997, Plaintiff entered into a group annuity policy ("Annuity") with Northern Life Insurance Company, the income of which is deferred from taxation by § 403(b) of the Internal Revenue Code and corresponding guidelines. [Doc. # 24, Stip. ¶ 1]. Northern Life Insurance Company was acquired by Defendant in 2002. [*Id.* at ¶ 2]. Beginning on July 29, 1997, and continuing through November 14, 2008, and beyond, Plaintiff made monthly, income tax deferred deposits to Northern Life Insurance Company and then to Defendant according to the terms of the Annuity. [*Id.* at ¶ 3].

Pursuant to section 10(A) of the Annuity, Plaintiff could ask Defendant for a cash loan, using the Annuity as security. [*Id.* at ¶ 4]. The Annuity provides that the amount loaned, when added to the amount of any outstanding loans and accumulated interest, cannot exceed 50% of the account value of the Annuity and must be repaid in equal monthly installments [*Id.* at ¶ 5-6]. Plaintiff applied for and received from Defendant five loans in the following amounts: $10,000 on July 25, 2002; $652.49 on July 24, 2004; $747.02 on March 29, 2005; $966.12 on February 23, 2006; and $594.95 on January 8, 2007. [*Id.* at ¶ 8].[1]

With each loan approval, Defendant sent Plaintiff a letter stating the amount of each monthly payment, and informing him of the requirement to make monthly payments pursuant to the Internal Revenue Code and its corresponding regulations. [*Id.* at ¶ 9]. The letters also informed Plaintiff that, under the Internal Revenue Code and its regulations, the failure to make four monthly payments in a timely manner

---

[1] In addition, Plaintiff received a hardship withdrawal in the amount of $5,795.79 on or about October 25, 2007. [Stip. ¶ 8].

2

would result in the entire loan being in default and considered to be a deemed distribution that was taxable in the year the default occurred. [*Id.*]. Each letter also stated that when Plaintiff qualified for a distribution from the Annuity in accordance with the Internal Revenue Service's regulations, funds would be taken from such distribution to cover missed loan payments. [*Id.* at ¶ 10].

The Annuity provides that distributions may be paid only when the annuitant reaches the age of 59 1/2, has a severance from employment, dies or becomes disabled within the meaning of §72(m)(7) of the Internal Revenue Code. [*Id.* at ¶ 15]. Plaintiff has not attained the age of 59 1/2, has not severed his employment, and has not died or become disabled. [*Id.* at ¶ 14].

Plaintiff made no payments on any of the loans, and all of the loans went into default. [*Id.* at ¶ 11] As he defaulted on each loan, the balance was reported to Plaintiff and to the Internal Revenue Service as taxable income. [*Id.* at ¶ 12].

On April 19, 2005, Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code. [*Id.* at ¶ 16]. The Chapter 7 trustee reported that there was no property available for distribution from the estate, and Plaintiff received a discharge of his debts on September 8, 2005. [*Id.* at ¶ 17; Case No. 05-33807, Doc. ## 14 and 24].[2] Plaintiff then filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 13, 2005. Defendant was not listed as a creditor in either Plaintiff's Chapter 7 or his Chapter 13 case. Defendant was not aware of either bankruptcy case until it received a letter in late August 2008 advising it of Plaintiff's Chapter 7 bankruptcy and providing a copy of Plaintiff's discharge order in that case. [Stip. ¶ 20]. Since learning of Plaintiff's discharge, Defendant has continued to charge interest on the defaulted loans. [*Id.* at ¶ 22]. According to Defendant, as of July 23, 2009, the value of Plaintiff's annuity account was $30,097.63 with a surrender penalty of $1,297.38, leaving a net value of $28,800.25. As of that date, the payoff amount for all of Plaintiff's loans from Defendant was $17,428.37. The parties agree that Defendant is a secured creditor as defined in 11 U.S.C. § 506(a)(1). [*Id.* at ¶ 13].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by

---

[2] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

3

Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## II. Plaintiff's Motion for Summary Judgment

In his complaint, Plaintiff alleges that Defendant has continued to charge interest on the five loans at issue in this case after it became aware of Plaintiff's Chapter 7 filing and subsequent discharge in violation of the automatic stay imposed under 11 U.S.C. § 362 and the discharge injunction set forth at 11 U.S.C. § 524(a)(2).[3] Defendant contends that no violation has occurred since it is an over-secured creditor

---

[3] Sections 362 and 524 were amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005. Because Plaintiff's bankruptcy case was filed before the effective date of the Act, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

4

and, as such, is entitled to accrue interest on the loans under 11 U.S.C. § 506(b).

A statutory automatic stay arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). To enforce creditor compliance with the automatic stay, the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). In order to prevail on a § 362(h) claim, a plaintiff must prove, by a preponderance of the evidence, that the stay imposed under § 362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000). A willful violation occurs "when the creditor knew of the stay and violated the stay by an intentional act." *Sharon v. TranSouth Fin. Corp. (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999).

Plaintiff cites no specific subsection of § 362(a) under which he is proceeding. Nevertheless, the court questions whether the mere accrual of interest without any attempt to collect such interest can ever be a violation of the automatic stay. Assuming for purposes of the parties' motions that it can be a violation, at least under some circumstances, for the following reasons, the court finds that no violation occurred in this case.

The court assumes that Plaintiff contends the automatic stay is being violated in the pending Chapter 13 case. There is no evidence that Defendant was aware of the Chapter 7 bankruptcy case until after it was closed and the automatic stay in that case statutorily terminated. *See* 11 U.S.C. § 362(c). There is no evidence that Defendant was aware of the pending Chapter 13 case until the commencement of this adversary proceeding. The parties' stipulated facts refer to an August 20, 2008, letter and state only that Plaintiff advised Defendant of the Chapter 7 case. With no awareness of the Chapter 13 case, a willful violation could not have occurred.

Furthermore, as discussed more fully below, the court finds on the stipulated facts presented that Defendant is entitled to postpetition interest under § 506(b). As such, it will not interpret § 362(a) to proscribe what the Bankruptcy Code expressly allows. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995) (refusing to give provisions of § 362(a) an interpretation that would proscribe what other sections of the Bankruptcy Code plainly intended to permit); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir.1991) (stating that numerous courts have found that an automatic stay has no effect on actions that are expressly allowed under the Bankruptcy Code).

As to the discharge injunction, Plaintiff concedes that no violation could have occurred until after

5

Defendant was made aware of Plaintiff's bankruptcy case and Chapter 7 discharge. That did not occur until October 2008, nearly three years after Plaintiff filed his Chapter 13 case. Debts relating to two of the five loans at issue - the February 23, 2006 and January 8, 2007 loans - arose after the commencement of Plaintiff's Chapter 13 case, were not included in Plaintiff's Chapter 13 plan and, therefore, were not debts discharged in either case. *See* 11 U.S.C. § 727(b) (providing that a discharge under Chapter 7 discharges a debtor "from all debts that arose before the date of the order for relief. . ."); *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (setting forth the limited circumstances in which a postpetition debt in a Chapter 13 case may be discharged). Thus, the discharge injunction does not apply to either of those loans.

Plaintiff has also failed to show that Defendant continuing to charge interest on the remaining three loans, all of which he received before filing his Chapter 7 petition, constitutes a violation of the discharge injunction. Under § 524(a)(2), a discharge "operates as an injunction against . . . an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Plaintiff has neither alleged nor offered any evidence showing that Defendant has taken any step to "collect, recover or offset" the amount owed on these loans as a personal liability of Plaintiff.

Rather, the focus of Plaintiff's motion is the proper timing of a setoff of the amount owed Defendant from the value of the Annuity. Plaintiff acknowledges that Defendant is entitled to offset the amount it owes Plaintiff (the value of the Annuity) against the amount of the balance of the loans owed Defendant.[4] However, he challenges Defendant's position that the setoff cannot occur until Plaintiff qualifies for a distribution from the Annuity under the provisions of the Internal Revenue Code. Plaintiff relies on § 72(p) of the Internal Revenue Code and argues that because a distribution is defined under § 72(p) as a loan in which the debtor has defaulted, setoff should be ordered as of the date Plaintiff filed his Chapter 7 petition with no allowance for postpetition interest or other charges. Plaintiff cites no authority for this argument, and the court finds the argument fails for several reasons.

---

[4] Plaintiff argues, however, that any setoff is limited to a setoff against the value of the Annuity on the date he filed his Chapter 7 petition and not against any postpetition contributions. While it is true, as Plaintiff argues, that his 403(b) contributions accumulated postpetition are after-acquired property that are not subject to Defendant's prepetition security interest, *see Anderson v. United States (In re Anderson)*, 149 B.R. 591, 595 (B.A.P. 9th Cir. 1992); 11 U.S.C.§ 552, and while it is also true that under § 553 of the Bankruptcy Code, "obligations that arise prepetition may not be setoff against countervailing obligations that arise postpetition," *Gordon Se-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, 270 F.3d 280, 290 (6th Cir. 2001); 11 U.S.C. § 553, Plaintiff has offered no evidence showing that Defendant has taken any action against property acquired after he filed his Chapter 7 petition.

6

First, to the extent Plaintiff relies on the setoff provision under the Bankruptcy Code, that provision does not mandate a setoff, it simply preserves in bankruptcy whatever right of setoff otherwise exists. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995); *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001); 11 U.S.C. § 553(a) (providing that "[e]xcept as otherwise provided. . . , this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . ."). Second, in the event of a loan offset, "the amount of the account balance [of the Annuity] that is offset against the loan is an actual distribution for purposes of the Internal Revenue Code, not a deemed distribution under section 72(p)." 26 C.F.R. § 1.72(p)-1, Q&A-13(b). "Distributions" are governed by 26 U.S.C. § 403(b)(11). That section provides that distributions may not begin before the participant attains the age of 59 1/2, is severed from employment, dies, or becomes disabled. 26 U.S.C. § 403(b)(11). In accordance with this provision, the Annuity limits the timing of distributions to those same events. Plaintiff has not attained the age of 59 1/2, has not severed his employment, and has not died or become disabled. As a result, Defendant has no right of setoff until one of those events occurs. *See* 26 C.F.R. § 1.72(p)-1, Q&A-13(b); 26 C.F.R. § 1.402(c)-2, Q&A-9(c), Example 6.

While it is true, as Plaintiff argues, that a loan governed by the provisions of § 72(p) and in which the debtor has defaulted is treated as having been received as a distribution from the employer plan for tax purposes (a deemed distribution), *see* 26 C.F.R. § 1.72(p)-1, Q&A-4(a), it is not treated as an actual distribution for the purpose of the distribution restrictions of § 403(b)(11), *see id.* at Q&A-12. The court, therefore, has no authority, to the extent such authority would otherwise exist, to order Defendant to exercise its right of setoff so as to preclude the accrual of interest after the deemed distribution.[5]

For all of the foregoing reasons, Plaintiff's motion for summary judgment will be denied.

### III. Defendant's Motion for Summary Judgment

Defendant argues that it was permitted to charge postpetition interest and that no violation of the stay or the discharge injunction occurred because it is an over-secured creditor and is entitled to such interest

---

[5] The court also notes that the Internal Revenue Service's regulations assume that interest continues to accrue between a deemed distribution and the offset of a loan. *See* 26 C.F.R. § 1.72(p)-1, Q&A-19 (stating that "a loan that is deemed to be distributed under section 72(p) ceases to be an outstanding loan for purposes of section 72, and the interest that accrues thereafter under the plan on the amount deemed distributed is disregarded for purposes of applying section 72 to the participant. . . .").

7

under § 506(b). Section 506(b) provides that "to the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim . . . ." The parties have stipulated that Defendant is a secured creditor.[6] Defendant also offers evidence that Plaintiff's account value under the 403(b) plan as of July 23, 2009, is greater than the amount owed on the loans at issue as of that date. While such value appears to include Plaintiff's postpetition contributions, the parties agree that the amount loaned, when added to the amount of any outstanding loans plus accumulated interest could not exceed 50% of the Annuity account value at the time the loans were made. On these facts, there is no dispute that Defendant's claim is over-secured such that it is entitled to post-petition interest as provided in § 506(b). Except for the argument rejected above, Plaintiff offers no evidence or argument that § 506(b) is not applicable in this case.

Moreover, it is well established that a secured creditor's lien passes through bankruptcy unaffected unless the lien is avoided, disallowed, or modified in a reorganization case. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991) (explaining that "a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor in rem"); *In re Kanakaris*, 341 B.R. 33, 35 (Bankr. S.D. Cal. 2006); *In re Willis*, 199 B.R. 153, 154 (Bankr. W.D. Ky. 1995). In this case, Defendant's security interest was not disallowed or avoided in Plaintiff's Chapter 7 case or modified in his Chapter 13 case. Because Defendant's security interest is a lien that passed through Plaintiff's bankruptcy unaffected, and because § 506(b) expressly allows Defendant's claim to accrue postpetition interest, Defendant did not, as a matter of law, violate the automatic stay or the discharge injunction. As such, Defendant is entitled to judgment on the complaint.

A separate judgment in accordance with this Memorandum of Decision will be entered.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 31] be, and hereby is, **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 30] be, and hereby is, **DENIED.**

---

[6] The court takes no position on the accuracy of this stipulation and accepts the parties' stipulation as true for purposes of this motion.

8